IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL TODD GILL, <br> TDCJ-CID No. 01542636, | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| v. | § <br> § | 2:24-CV-81-Z-BR |
| AARON WESCOTT, *et al.,* | § <br> § <br> § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
DENY DEFENDANTS WILSON AND TUCKER'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants Alexander Wilson ("Wilson") and James Tucker ("Tucker"). (ECF 22). For the reasons stated herein, the Magistrate Judge recommends that the Motion be DENIED.

## I. FACTUAL BACKGROUND

Plaintiff Michael Todd Gill ("Gill") claims that Defendants failed to protect him from excessive force used against him while he was housed at the Jordan Unit of the Texas Department of Criminal Justice in Pampa, Texas. Wilson and Tucker filed the Motion, alleging that they are entitled to qualified immunity as a matter of law. (*Id.*).

**A.     Plaintiff's Version of Events.**

Gill's summary judgment evidence shows that, on or about the morning of February 14, 2023, he was in the C-pod dayroom on his way to the shower. (ECF 23-2 at 1). He heard Wilson begin to call out inmate names, so he stopped to listen for his name. Wilson then told Gill he needed to put a shirt on, and Gill responded that he was headed to the shower. (*Id.*). Wilson began speaking into his hand-held radio. (*Id.*). Defendant Aaron Wescott ("Wescott") arrived and ordered

1

Gill to put his hands behind his back to be handcuffed, and Gill complied.[1] (*Id*.). Wilson and Wescott then escorted Gill out of C-pod and into the vestibule area in front of a set of stairs, and left him facing the stairs, handcuffed, as other guards arrived with a video camera.[2] (*Id*.).

After several minutes of standing handcuffed, he turned to ask why he was being held. (*Id*. at 2). Gill then contends that Wescott slammed his face into the steel beam of the stairs, "causing many fractures to [his] face and excruciating pain" to his face and causing him to fall to the floor. (*Id*.). He states that Wescott then proceeded to beat him by kicking and punching him in his face and body repeatedly, with him unable to defend himself due to being handcuffed. (*Id*.). He claims that Wilson, Tucker and other guards "stood watching the sadistic beating going on until unknown other officers intervened" to stop Wescott. (*Id*.). Gill described the duration of the beating as "a lengthy period of time" and that it "seemed to go on forever." (*Id*.).[3]

**B.    Defendants' Version of Events.**

Defendants' summary judgment evidence shows that Wilson was conducting security rounds and noticed Gill standing in the C-wing dayroom, not wearing his state-issued shirt. (ECF 22-3 at 28). Wilson ordered Gill to put on his shirt and sit down. Gill then walked toward Wilson, shouting profanity and throwing his hands in the air. (*Id*.; ECF 22-6 at 2). When Gill got within one foot of Wilson, Wilson drew his pepper spray, took a few steps back and ordered Gill to back away from him. (ECF 22-3 at 28). Gill shouted at Wilson, "I'll fucking kill you." (*Id*.). Wilson

---

[1]Although Wescott is a defendant in this case, he is not a party to the Motion.

[2]No video evidence was submitted by either side in connection with the Motion.

[3]Defendants contend that Gill told investigators he did not remember anything after he tried to pull away from Wescott. (ECF 22-2 at 6-7). Gill has sworn under oath that he never made such a statement and that he does, in fact, remember the incident. (ECF 23 at 5). There is no indication in the record that Gill's purported previous statement was under oath; as a result, the "sham affidavit" doctrine is not implicated. *See, e.g., Seigler v. Wal-Mart Stores, Inc.*, 30 F.4th 472 (5th Cir. 2022). The Court will consider Gill's sworn statements for the purposes of this Motion.

2

then initiated the Incident Command System ("ICS") and ordered Gill to submit to hand restraints. (*Id*.; ECF 22-6 at 2). Gill responded with more profanity and began to walk away. (*Id*. at 2). Wescott responded to the ICS, entered the C-wing dayroom and ordered Gill to submit to hand restraints, to which Gill complied. (ECF 22-3 at 28). Wescott then escorted Gill out of the C-wing dayroom and into the D-space. (*Id*.). Wilson held open the door between the C-wing dayroom and the D-space for Wescott and Gill to pass through. (ECF 22-6 at 3). At the moment Wilson was closing the door, Wescott and Gill fell to the floor and hit their heads on the wall. (*Id*.). Wilson secured the door to prevent the possibility of other inmates in the dayroom getting involved, because he saw the other inmates reacting to the incident and he wanted to prevent the situation from escalating. (*Id*.).

Defendants state that the use of force by Wescott occurred when Wescott was escorting Gill away from the C-wing dayroom and Gill turned toward Wescott and began to pull away. (ECF 22-5 at 9). Wescott ordered Gill to stop resisting and warned him that failure to comply would result in force being used. (ECF 22-3 at 28). Gill continued to resist, so Wescott attempted to take Gill to the floor. (*Id*.). As Wescott planted his foot to guide Gill to the floor, Wescott's and Gill's feet became entangled, causing both Wescott and Gill to fall and hit their heads against the wall. (ECF 22-2 at 7). The fall also caused Gill to hit his face on the floor. Wilson saw the struggle between Wescott and Gill and notified responding staff via radio that a use of force was in progress. (ECF 22-3 at 29). Wilson's Behavioral Intervention Report states that it appeared that Wescott was attempting "to bring his right leg across inmate Gill's feet in an attempt to sweep his legs out from underneath him so that Officer Wescott could take inmate Gill to the floor to gain compliance." (*Id*.). Defendants state that no force was used upon Gill after the fall to the floor. (ECF 22-2 at 7). Defendants' evidence indicates that Tucker arrived in response to Wilson's call only after Gill and

3

Wescott were on the ground and, at that time, Tucker assumed control of the video camera. (ECF 22-3 at 26.).

TDCJ's internal investigation determined that Wescott's initiation of force was proper, but the force he used was excessive. He received an Employee Offense Report for Use of Excessive or Unnecessary Force – Provoked With Serious Injuries. (ECF 22-3 at 5, 8). Tucker received verbal counseling for failing to keep Gill in full view of the video camera. (*Id.* at 5). The investigation could not substantiate claims of excessive force against Wilson because the statements made by inmate witnesses were conflicting. (ECF 22-5 at 8).

### C.   Injuries Suffered During the Use of Force.

The parties agree, and the summary judgment evidence shows, that Gill was severely injured in the incident. (ECF 22-3 at 5, 12). TDCJ records indicate that Gill suffered several lacerations to the left side of his face and top of his head, bruising to both eyes, a 2.5-inch fracture to the back of his head, fractures to both sides of his jaw and an internal brain bleed. (*Id.* at 5). After initial evaluation by prison personnel showed that Gill needed sutures, he was transported to Northwest Texas Hospital for evaluation. He ultimately was hospitalized for six days. (*Id*. at 8).

Hospital medical records provided by Gill give more detail about the extent of his injuries. He suffered a traumatic brain injury with loss of consciousness (ECF 23-3 at 1). A CT scan also revealed that he suffered multiple fractures of the bones of the left side of his face and head, including the left zygomaticomaxillary complex, the left orbital floor and medial orbital wall, the left orbital roof and frontal bone, left temporal bone and sphenoid wing, and the left sinuses. (ECF 23-3 at 2). The scan also showed a fracture of the right lateral orbital wall and sphenoid wing with bleeding in both right sinuses and a hematoma along the right orbit. (*Id*.). Among other injuries, the CT scan also confirmed the fracture to the back of his head and the subdural hematoma. (*Id*.).

Wescott suffered a six-centimeter hematoma on the back left side of his head due to hitting his head on the wall as both men fell to the floor. (ECF 22-3 at 11; ECF 22-5 at 43).

## II. SUMMARY JUDGMENT STANDARD

**A.      Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the

movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Gill's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.    Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless

existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation and quotation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Gill does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Id.* (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, the qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan v. Cotton*, 572 U.S. 650, 651 (2018) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

## III. LEGAL ANALYSIS

Gill alleges that Wilson and Tucker violated his constitutional rights by failing to intercede and protect him from Wescott's excessive use of force.

**A.    Bystander Liability Claim.**

The U.S. Constitution prohibits the infliction of cruel and unusual punishment, and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The treatment and the confinement conditions to which the Eighth Amendment applies includes both the safety and health of prisoners. *Id*. The failure to protect an inmate from the use of excessive force by others can be an Eighth Amendment violation that may give rise to liability under Section 1983. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (An officer may be liable under 42 U.S.C. § 1983 if he is "present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force.").

In the Fifth Circuit, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale*, 45 F.3d at 919). In short, courts must "consider whether an officer 'acquiesce[d] in" the alleged constitutional violation.'" *Id.* at 647. Bystander liability only occurs if the bystander defendant had "reasonable opportunity to intercede and prevent the constitutional violation." *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5–6 (N.D. Tex. Mar. 27, 2015), *R. & R. adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (citing *Spencer v. Rau*, 542 F.Supp.2d

583, 594 (W.D. Tex. 2007) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it")).

The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Rogers*, 2015 WL 3439145 at *5 (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *Terrell v. Castleberry*, Civ. A. No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.")). Mere presence at the scene of alleged use of excessive force, however, does not give rise to bystander liability. *See Whitley*, 726 F.3d at 646-47; *Vasquez v. Chacon*, No. 3:08-CV-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001), *aff'd* 390 F. App'x 305, 2010 WL 3023273 (5th Cir. 2010)). This determination involves consideration of both the duration of the alleged use of force and the location of the inmate relative to the bystanders. *See generally Vasquez*, 2009 WL 2169017, at *6.

An internal investigation determined that Wescott's use of force was justified but that the force he used was excessive.[4] (ECF 22-3 at 5). However, the parties provided very different versions of how Gill's injuries were inflicted. As shown above, Gill contends that, after both

---

[4] The question before the Court at this time is not whether Gill's behavior justified a use of force by Wescott, as Defendants argue in their Motion; instead, the question is whether the force used by Wescott was excessive to the needs of the situation. *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). At this point, the undisputed facts show that Wescott was determined to have used excessive force and, as a result, his conduct can provide the basis for a potential bystander liability claim against Defendants.

Wilson and Tucker arrived on the scene, Wescott began beating him; that the beating by Wescott lasted "a lengthy period of time;" and that Wilson and Tucker were in close proximity to the beating and failed to intervene. (ECF 22-2 at 2). Conversely, Defendants allege that Gill's injuries were caused when Gill resisted Wescott's efforts to take him to the ground, their feet became entangled, and both fell. (ECF 22-3 at 22). Tucker claims that he arrived on the scene in response to Wilson's call only after Gill was on the ground. (*Id*. at 26). Wilson alleges that he was in the process of closing the door when the initial use of force occurred (ECF 22-6 at 3) but admits he saw Gill and Wescott "struggle." (ECF 22-3 at 29).

Written statements by inmate witnesses differ significantly from each other, with one saying he did not see Wescott strike Gill (ECF 22-5 at 29), some saying that both Wescott and Wilson were involved in using excessive force by kicking and "slamming" Gill. (*Id.* at 30, 31, 36-39), others saying Wescott "repeatedly pushed/slammed Gill's face into the ground/cement," "slammed him against the wall," "slam[m]ed the offender on his head" or "slammed [the] inmate to the ground" (*Id.* at 32-34) and one not directly addressing the issue. (*Id.* at 35). Written witness statements from guards uniformly state either that Wescott did not strike Gill (ECF 22-3 at 24) or that they arrived after Gill and Wescott were on the floor and do not reference the initial use of force to state how Gill's injuries occurred. (*Id.* at 25-27).

Construing his Amended Complaint liberally, Gill has raised a fact issue as to whether Wilson and Tucker have bystander liability deriving from the excessive force claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a *pro se* plaintiff's pleadings should be liberally construed). Gill has overcome the first prong of Defendants' qualified immunity claim by coming forward with evidence that creates a genuine question of fact as to whether Defendants' actions violated the Eighth Amendment. He has sufficiently alleged that both Wilson and Tucker arrived

11

on the scene before the beating began and were in close proximity to him. While mere presence is insufficient to defeat qualified immunity, as noted above, Gill states that the beating lasted a "lengthy period of time" such that it is plausible they had sufficient time to intervene but did not do so, given that it is undisputed that both were in close proximity to Gill and Wescott during all or a portion of the incident. In addition, some inmate witnesses directly state that Wilson was a participant in the takedown of Gill showing, at a minimum, that he was on site and close enough to intervene if Gill's version of the facts are true. Wilson also admits to witnessing the "struggle". (ECF 22-3 at 29). Further, the extent of Gill's injuries, as noted above, also indicates that it is plausible the injuries could have been caused by a beating rather than a fall.

This determination does not mean that Gill will ultimately prevail on the merits of his claims, nor does it mean that Defendants ultimately will not be entitled to qualified immunity. However, because resolution of qualified immunity at this stage turns on "what the defendant actually did, rather than on whether the defendant is immunized from liability," and because there are "conflicting versions of [Defendants'] conduct, one of which would establish and the other defeat liability," Defendants' affirmative defense of qualified immunity is inappropriate for resolution by summary judgment. *See Haverda*, 723 F.3d at 599.

C.     **Gill Overcomes the Second Prong of the Qualified Immunity Analysis.**

Because bystander liability was clearly established at the time of Gill's injuries, Defendants' conduct, as alleged by Gill, was not objectively reasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717,

726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Batyukova*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

Gill contends that the Fifth Circuit provided fair notice to Defendants of their constitutional duty to intervene in *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). In *Hale*, the Fifth Circuit held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Id*. at 919; *see also Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021) (finding that *Hale* provides fair notice that bystander liability is clearly established law sufficient to preclude summary judgment on qualified immunity for bystander defendants); *see also Rogers*, 2015 WL 3439145

and cases cited therein). Gill has met his burden to provide relevant case law sufficient to defeat summary judgment.

**D.    Defendants' Motion Should Be Denied.**

For the reasons stated above, Gill provided sufficient evidence to create a fact issue as to Defendants' entitlement to qualified immunity. Specifically, Gill created a material fact issue as to whether Defendants' conduct violated his constitutional rights and whether Defendants violated Gill's clearly established rights. Defendants' motion for summary judgment on qualified immunity should be denied.

## IV. RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment (ECF 22) be DENIED.

## V. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 18, 2025.

*[signature]*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by

electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).